UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **00-6125** CR-DIMITROULEAS

18 USC 371
18 USC 1014
18 USC 1341
18 USC 1343
18 USC 1344

MAGISTRATE JUDGE
SNOW

UNITED STATES OF AMERICA,

    **Plaintiff,**

v.

ELIZABETH "LIZ" VELAZQUEZ

    **Defendant.**



## INFORMATION

The United States Attorney charges that:

### COUNT I

### CONSPIRACY TO COMMIT BANK FRAUD, LOAN APPLICATION FRAUD, MAIL FRAUD. AND WIRE FRAUD

1. From in or about June 1995 through December 1996, the exact dates being unknown, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

ELIZABETH "LIZ" VELAZQUEZ,

did knowingly and willfully combine, conspire, confederate, and agree with persons known and unknown to commit the following offenses against the United States:

    (a)    bank fraud, in violation of Title 18, United States Code, Section 1344;



(b)     filing false loan applications with financial institutions, in violation of Title 18 United States Code, Section 1014;

(c)     mail fraud, in violation of Title 18, United States Code, Section 1341; and

(d)     wire fraud, in violation of Title 18, United States Code, Section 1343.

### BACKGROUND

At all times material to this information:

2.     Barnett Bank (now known as Bank of America) and Savings of America (now known as Washington Mutual) (hereinafter "the Banks") were nationally chartered banks whose deposits were insured by the Federal Deposit Insurance Corporation.

3.     National Mortgage, Bennett Financial, CFI Mortgage Corporation, Preferred Funding, and Advantage Financial are mortgage brokers (hereafter referred to as the Mortgage Brokers). The Mortgage Brokers are in the business of finding lenders for persons who need a loan to purchase real estate. During the course of funding the loans for the buyers the Mortgage Brokers would send documents and other items to the lender and receive documents and other items from the lender, including funds for closing, by facsimile, wire transfer, and commercial interstate carrier.

### Object of the Conspiracy

4.     It was the object of the conspiracy that the defendant and her coconspirators would submit and cause to be submitted false information and false documentation to the Banks and the Mortgage Brokers, in order to induce the Banks and The Mortgage Brokers and their lenders to loan money to persons who could not otherwise qualify for a loan, in order that the defendant and her coconspirators could profit through the sale of real property.

### Manner and Means of the Conspiracy

5. It was part of the conspiracy that the coconspirators would and did obtain and finance the purchase of residential real estate.

6. It was further part of the conspiracy that, after the homes were purchased by the defendant's coconspirators, they would spend some money improving the homes, and then sell the homes for approximately double the price to unsophisticated buyers.

7. It was further part of the conspiracy that the buyers would not have sufficient income or assets or would have too many liabilities to qualify for a loan or to pay the down payment and closing costs to purchase the property.

8. It was further part of the conspiracy that the defendant would and did complete or cause to be completed loan applications for the buyers at the Banks and Mortgage Brokers, which loan applications contained false information.

9. It was further part of the conspiracy that the defendant would and did submit or caused to be submitted with the loan application to the Banks and Mortgage Brokers false documents in order to qualify each of the buyers for their loan.

10. It was further part of the conspiracy that, if the income of a buyer was insufficient to qualify for a loan, the defendant would and did prepare or cause to be prepared false W-2's and pay stubs which were submitted to the Banks and Mortgage Brokers on behalf of the buyer.

11. It was further part of the conspiracy that, if the income of a buyer was insufficient to qualify for a loan, the defendant and her coconspirators caused to be prepared Form 1040's which

falsely stated the annual income of the buyer and which were submitted to the Banks and Mortgage Brokers on behalf of the buyer.

12. It was further part of the conspiracy that, if the assets of a buyer were insufficient to reflect the ability to make a down payment on a loan, the defendant would and did create or cause to be created a "gift letter," which falsely represented that the down payment had been gifted to the buyer by a relative, and would then submit the fraudulent "gift letter" to the Banks and Mortgage Brokers on behalf of the buyer.

13. It was further part of the conspiracy that the defendant would and did create bank statements or alter existing bank statements which would show balances for the buyer or a person gifting the down payment to the buyer, either greatly over-representing the true balance in the account or a substantial balance in a bank where the person had no account, and would then submit the fraudulent bank statements to the Banks and Mortgage Brokers.

14. It was further part of the conspiracy that, if the buyer had little or no credit history, the defendant would and did create or caused to be created credit reference letters from Bell South, Florida Power and Light and other businesses falsely stating that the buyer had an excellent credit history, and would then submit or cause to be submitted the credit reference letters to the Banks and Mortgage Brokers on behalf of the buyer.

15. It was further part of the conspiracy that the defendant would and did submit or cause to be submitted to the Banks and Mortgage Brokers fraudulent letters created to fill in the gaps in employment and other questions the Banks and Mortgage Brokers may have on the loan application.

16. It was further part of the conspiracy that in order to prevent the Banks and Mortgage Brokers from uncovering the false information, such as the false Form W-2's, false bank statements, and false rental information, the defendant would and did include names, telephone numbers and addresses in the loan applications submitted to the Banks and Mortgage Brokers of persons who would, at the direction of the defendants and her coconspirators, provide false verifications as to the employment, bank deposits or rental information of the buyers to the Banks and Mortgage Brokers.

17. It was further part of the conspiracy that the defendant would and did conspire with loan officers and loan processors in order that the written verification of employment forms and verification of deposit forms would be given directly to the defendants or their coconspirators instead of being mailed directly to the employers or the banks, which forms would then be falsely completed and sent back to the Banks and Mortgage Brokers.

18. It was further part of the conspiracy that the defendants would and did falsely represent to the Banks and the Mortgage Brokers that the closing costs came from the buyer when as the defendant well knew the closing costs were paid or caused to be paid by the coconspirators.

OVERT ACTS

19. In furtherance of the conspiracy and to effect the objects thereof, at least one of the following overt acts, among others, was carried out by at least one coconspirator in the Southern District of Florida, and elsewhere:

A. On or about November 29, 1995, defendant submitted a loan application to Mortgage Dynamics. With the loan application were Form W-2's, which falsely reflected that Devon Fullerton earned $48,674.92 for 1994 and $48,159.10 for 1993.

B.  On or about December 6, 1995, defendant caused National Mortgage to send a facsimile to a company in Georgia in order to get a price quote for a loan for Devon Fullerton.

C.  On or about April 2, 1996, defendant submitted a loan application to National Mortgage. The loan application falsely reflected that Minnie Harvard was employed by VC Electronics.

D.  On or about May 3, 1996, defendant caused the closing agent to send a facsimile to Citicorp Mortgage Corporation in Missouri containing instructions on where to wire the funds for the loan for Minnie Harvard.

E.  On or about April 3, 1996, defendant caused a loan application to be submitted to CFI Mortgage Corporation. The loan application falsely reflected that Cassandra Crawford had $5,000.00 in account #3090741891223 at First Union Bank, and that Cassandra Crawford had made federal estimated tax payments of $9,200 in 1995 and $7,800 in 1994 based on self employment income in excess of $25,000 each year.

F.  On or about April 18, 1996, defendant caused a fraudulent verification of deposit purporting to be from First Union Bank to be sent by facsimile to CFI claiming that Cassandra Crawford had $5,327.17 in her account at First Union Bank.

G.  On or about April 23, 1996, defendant caused a cashier's check in the amount of $80,838.83 to be sent by commercial interstate carrier from First State Bank-Calvert Branch, Calvert, Texas.

H. On or about June 27, 1996, defendant caused to be submitted a loan application to Advantage. The loan application falsely reflected that Johnny Donfred had $100,000 in his account at Savings of America.

I. On or about July 23, 1996, defendant caused Chase Manhattan Funding to send a facsimile from New Jersey notifying Advantage that it would fund the loan for Johnny Donfred.

All in violation of Title 18, United States Code, Section 371.

*[signature]*
THOMAS E. SCOTT
UNITED STATES ATTORNEY

*[signature]*
JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|
| v. | **CERTIFICATE OF TRIAL ATTORNEY*** |
| ELIZABETH "LIZ" VELAZQUEZ | **Superseding Case Information**: |

**Court Division**: (Select One)

New Defendant(s)     Yes ____     No ____
Number of New Defendants ____
Total number of counts ____

___ Miami   ___ Key West
_X_ FTL     ___ WPB   ___ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:   (Yes or No) __No__
   List language and/or dialect   __English__

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                       (Check only one)

   | I   | 0 to 5 days       | _X_ | Petty    | ___ |
   | II  | 6 to 10 days      | ___ | Minor    | ___ |
   | III | 11 to 20 days     | ___ | Misdem.  | ___ |
   | IV  | 21 to 60 days     | ___ | Felony   | _X_ |
   | V   | 61 days and over  | ___ |          |     |

6. Has this case been previously filed in this District Court? (Yes or No)  __No__
   If yes:
   Judge: _____   Case No. _____
   (Attach copy of dispositive order)

   Has a complaint been filed in this matter?  (Yes or No) __No__
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: __99-4657-SNOW; 97-4601-SNOW; and 97-4609-SNOW__
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____   District of _____

   Is this a potential death penalty case? (Yes or No) __NO__

7. Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? _X_ Yes ___ No   If yes, was it pending in the Central Region? _X_ Yes ___ No

   _____
   JEFFREY N. KAPLAN
   ASSISTANT UNITED STATES ATTORNEY
   Court Bar No. A5500030

*Penalty Sheet(s) attached                                         REV.4/7/99
N:\udd\hpantale\kaplan\VELASQUEZ\INfPKG2.wpd

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: ELIZABETH "LIZ" VELAZQUEZ    No.: _____

Count #1:
Conspiracy to commit bank fraud, filing false loan applications with financial institutions, mail and wire fraud, all in violation of 18:371

*Max Penalty:   5 years' maximum imprisonment; $250,000 fine

Count # :

*Max Penalty:

Count #:

*Max Penalty:

Count # :

*Max Penalty

Count # :

*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

REV 12/12/96